2-16-22 United States v. Antonio Small Good afternoon, Your Honors. On behalf of Mr. Small, Devin McLaughlin, on a lighter and personal note, I'm happy to report this case has nothing to do with labor law, that's our labor lesson, but it is obviously an incredibly serious case for my client who's serving a 25-year sentence. It's our position that his sentence was procedurally unreasonable and should be reversed based on a mistake in the guideline calculation. Specifically, the position is that the district court made a clearly erroneous finding with regard to my client possessing a firearm for purposes of the 2D1.1b firearm enhancement. Under this court's precedent, clear error will exist if a finding is based on speculation, and we respectfully submit that when you look at what's here, the finding that there was a firearm by Mr. Small is based on speculation. The backdrop is incredibly important, and the government has emphasized this and I've emphasized it, which is that this is a year-and-a-half-plus investigation into Mr. Small's activities, which garnered and used every investigative technique that existed. And so you have thousands of hours or hundreds of hours of calls, wiretaps, text, phones retrieved. You have cooperators, and in our experience, cooperators are pretty quick to go ahead and say somebody has a firearm if there's a basis for the firearm because they know that the feds are interested in that. We have a search of my client's residence, no firearm. We have a search of the Poplar Street stash house, no firearm, nothing related to a firearm. So against that complete backdrop, the enhancement applied to Mr. Small is based on this October 12, 2018, short conversation between him, his girlfriend, and Mr. Sheffield where he's involved in a dispute with Mr. Taylor. His prior, the PSR says that his prior conviction was for, was gun-related, right? Sure. No, obviously, yeah, but that was, and he got, he was released, like, at the end of October, and then this, I think, pretty quickly got back into it soon after. But so I was having difficulty understanding what else, how else one might interpret that conversation on October 12. What else could it be? There's two responses, Your Honor. As you see the conversation, there's a reference to an it, you know, where is it? That's what I'm asking about. Right. And so the first response, Your Honor, is that it's not our burden to prove what it is. The question is, did the government prove that it is a firearm? Well, no, was it clear error for the district court to infer that it was a firearm? Isn't that right? The standard is clear error in our position that it was clear error because against the backdrop of everything, I keep, you know, I've read it 25, 30 times. I keep going back and looking at this exchange, and the leap to it being a firearm, from our perspective, is an inference upon an inference upon an inference. You had the agent go ahead and testify. I'm sorry, did it just need to be a firearm, or was it constructively possessed a dangerous weapon? Dangerous weapon. Could have been some other weapon, and the context still was that he had been robbed by someone, and it was inferred that he was going to go punish that guy. Right. And so certainly under the enhancement, it could be any dangerous weapon. Nobody took a position whether it was a firearm, knife, or whatever. The reference that the government was relying on, the inference the government was positing, was that it was a dangerous weapon that the it was responsive to. Inference number one, that my client was going to have a volatile encounter with Mr. Taylor, I think that's a reasonable inference. I mean, I don't think anybody's arguing that. The question is whether this brief stop at the stash house really involved a gun. And obviously, nobody ever saw a gun. There's a pole camera. No, no, no. That part's clear. But the question is, was there enough for a court to find that the reference, circumstantial evidence as it may be, because it could be a lot of different things in a different context, was sufficient given this context, where they were going after Taylor, and the idea was to confront Taylor or to do something to Taylor? And what would you need an it for if it wasn't a dangerous weapon? Your Honor, as we all recognize, evidence comes on the spectrum. You have direct evidence. You have circumstantial evidence. And at some point, circumstantial evidence is too circumstantial to be sufficient to support it. So you end up with conjecture or speculation. So we have that spectrum. Here, Your Honor, I don't know what it is. I submit that the court doesn't know what it is. And we don't really know what it is. And so I've been struggling with this, which is that there seems to be immediate recognition of what it is, because they seem to be talking about the same thing. We don't have any evidence by the government about what any prior communications were. It makes no sense to me that they would instantly think it is a gun, instantly think it is money, instantly think it is a drug. I don't know what it is. And it's that lack of knowledge that, frankly, ends up, you know, the government bears the burden on this. The government ends up losing on that. So I'm thinking this could be a situation where he had already had preplanned dealings with Sheffield. Sheffield was his drug dealer. You know, I'm going to come by and pick up drugs. I'm going to do something. But meanwhile, he's in a hurry to go deal with Mr. Taylor. So let's hurry up. I need this thing. It doesn't even have to be related to what he's doing with Mr. Taylor. And so I recognize that, you know, everything needs to be construed in the light most favorable to the government. The question is whether it's a reasonable inference. And clearly, if it's a reasonable inference, this court needs to go ahead and affirm. There comes a point where you're guessing, you're relying on your hunters and your instincts that, okay, drug dealers deal with guns, and so, therefore, this is what's going to end up happening. But out of a year and a half of dealings with Mr. Small, to go ahead and give him a gun enhancement based on this interaction, when you read it 25 times, I think the leap in our position is that the leap is too speculative, Your Honor. You certainly have an argument here. There's no doubt about that. Yeah. The only question I have is standard proof. I think, what, fair preponderance here? Preponderance of the evidence is what is required to impose an enhancement, yes. And so that's a question of more probable than not, it seems to me. And why wasn't the district court in a position to decide that it was more probable than not that it was a gun or it's a dangerous weapon? I think, Your Honor, they're in a position to say maybe it's a gun. They're in a position to say maybe it's a gun. They're all in a position to say maybe it's a gun because it has to be some tangible object. Well, it does seem to me that given the circumstances, that it could, it's more probable than not it was a dangerous weapon, and that maybe, I mean, under, one could see his position as a dangerous weapon, and the speculation would be, real speculation would be that it was something else. You know, a birthday cake or something of that sort. Anything else? I come back to struggling how there's a dearth of evidence as to what prior communications existed. We know they immediately seem to be communicating on the same page with regard to an it, and that just implies to me that a reasonable inference is that there had been some prior communication about him potentially meeting Mr. Sheffield to do X, Y, or Z. My guy's in a hurry, you know. This gentleman is in a car, potentially leaving, meeting Mr. Taylor, is in a car leaving, and he's in a hurry to go after him and try to go ahead and confront him. I'm not disputing any of that. But I don't discount the possibility that the two of them, Mr. Sheffield and my client, had prearranged business where they had to get something, and then he had to go do his business. I know that there are all these what ifs, what ifs, what ifs, guesses, guesses, guesses, inferences, inferences, but in the context of an 18-month investigation where my client, there's zero evidence that he has any connection to firearms, which is kind of mind-boggling in the context of a pretty intensive drug investigation, that this conversation bears the weight that the court gave to it. Could you say it's a birthday cake? Could you say it's a gun? Could you say it's drugs? Sure, you can say any of those, but I think at the bottom end of it, you end up having to agree you're guessing, and I just wouldn't go ahead and compound the guidelines calculation for my client by basing it on a guess. Thank you. Thank you. Good afternoon, Your Honors. I'm Karen Peck. I'm the Assistant U.S. Attorney from the District of Connecticut who handled this case below and is handling it here on appeal. Just to put this in context, we have a sentence here that was imposed by a highly experienced district court judge who amassed a substantial record in support of the various findings that he made that bear on the sentence of Antonio Small. Having a contested FATICO hearing that lasted several hours, listening directly to wiretap calls, seeing video evidence, toll record analysis, physical evidence, any number of things, hearing from the case agent who had been the case agent throughout the investigation. Ultimately, issuing a nearly 20-page finding on all of the disputed issues, three pages of which were devoted to this finding that Antonio Small had possessed a gun in the stash house at Poplar Street during the ongoing conspiracy. The evidence in the case, and I will address it briefly as it relates to the gun, but the question here is, for this court, is the evidence supporting the enhancement that Judge Thompson found, is it plausible? And the answer to that is a resounding yes. It's certainly plausible. It's more than plausible. And there was nothing clearly erroneous about his finding in this regard. I would note... Right, he has to make the finding based on a preponderance of the evidence, so it's more likely than not. And the question for this court... Yes, but for this court, the question is, was his finding clearly erroneous? And it's been discussed in other appellate decisions by this court as, was that a plausible finding that he made? Is it supported by the evidence that was in front of him to a preponderance standard? And I think that there has been a bit of a mischaracterization of what the evidence about this gun possession was. As Judge Thompson noted, the location where this gun was believed to have been found is a stash house where thousands of dollars' worth of drugs were kept by Antonio Small. And during this period of time where he's seen frequently with other conspirators, he's often seen with money, with expensive jewelry, all of these things at this location. I know you're setting a scene for us here, but I'm always used to seeing your adversary, your friend, your opposing counsel, emphasize the idea that there's not other evidence of gun possession here, that there's something... If we look to that in determining how to assess this conversation, the fact that there isn't, or apparently there isn't, prior testimony from a cooperator, or evidence of him being seen with a gun, or given sort of the breadth of this investigation, that there's an unusual absence of other indicators that he's possessed a gun. What are we to make of that? I don't really think there are an unusual absence of indicators. And one of the reasons I'm talking about the Poplar Street house, and that being where the gun was found, is it's a stash house where it makes sense that there would be a gun that would be held. That's just a generic answer, in a sense. You've got stash houses, you've got drugs, and drugs and guns go together. But there's no reference, as I recall, there's no evidence that anybody saw a gun in the stash house at or around the time, within a reasonable period of time, anyway, before this incident. I don't think it's, I don't mean it to be generic. And the reason I say that is because this incident, where the gun becomes apparent, is an incident that involved someone who had previously robbed Antonio Small of drug proceeds. And so it, and the Poplar Street stash house is a place where both drugs and money are coming, they're there. And he's also a convicted felon who has a prior conviction for a weapons related offense. On probation, not able to hold a gun himself, or at least he's going to be careful about that. But I think- Which you would argue is the explanation for the absence of any direct evidence. Absolutely. And I would also note, Your Honor, that this particular incident that we're talking about, the whole of that incident makes it, I believe, quite clear that he was getting a weapon that day. Because what's happening is he's having a conversation with a girlfriend who tells him, this guy, Lurch, or Taylor, who, you know, the guy that you've been robbed by, he's here. He's at my grandmother's house. I can see him. And what Antonio Small does immediately is, what's the car? What's the make? What's the color? You send me a picture of that car. You keep your eye on that car. I'm going to call you right back. And so he calls Evan Sheffield at the Poplar Street location within a minute. And what he doesn't, he doesn't say it. He says this. He says, where's it at? Where's it at? Why you got to hold upstairs? So why you got to hold upstairs? Hold suggests a weapon. He's on the phone. The agents are watching on the poll camera him pacing up and down, running in and then running out and getting in his car and taking off while calling the girlfriend and pressing once again on, is he still there? You know, what's happening? Who's he with? I'm on my way. All of those kind of conversations. She's alerting him to things. It's clear that she's even having a conversation with Taylor and saying, hey, you know, I don't mess with you. I'm with this guy. And then she starts saying to him, you know, you got to be careful. There's cameras out here. And my grandmother's out here. And then you have him with his brother Anthony in separate cars trying to track this guy down, and their conversation, and this whole scenario takes place in under an hour. Their conversation makes it very clear they're hunting for him. And, you know, he talks about I'm going to whip a pot on him. And then when Anthony says they figure out he's with a female they believe to be a source for police, they're like, man, if we find this guy, we'd be going to jail. So the context of this conversation, it makes it very clear what's going on here. What does why you've got a hold upstairs mean? I thought it might be a transcription error, and it was referring to a hold. No, no, it's hold. Why you've got a hold upstairs. And the reason he's saying that in part is, A, the gun needs to be readily accessible, and, B, the place where the drugs were kept was down in the lower levels of the residence. So Evan Sheffield, who is at the Poplar Street location and who is part of the conspiracy, is the one he's saying to him, you know, why you've got a hold upstairs? You know, that gun should be down, effectively down where my stuff is, where my drugs are, and also readily accessible to me. So the whole of that interchange and that entire hour's worth of discussion, I think leads to the obvious conclusion that he was going to arm himself to deal with this guy who had robbed him previously, not that long before. And that's what Judge Thompson found, and that's what he mentioned. Also, when we did searches in this case, there were guns found in other conspirators' homes, and as we noted in our brief and as was brought out at the Fatico hearing, there had been a shooting on the street a few days before the searches. There was a very increased police presence as a result, and the Poplar Street location appeared to have been cleaned out of much of what had been there, given the level of activity. They still found a lot of drugs in the house. They found some drugs. They didn't find a lot of drugs. They found about 100-folds. But that goes against the clean-out theory a little bit, doesn't it? To my mind, part of that is speculation. Like, oh, he had a gun, but he got rid of it, but he left the drugs in plain sight. I mean, and maybe that's what happened, but those inferences seem a bit more removed to me. Well, I would say that the level of activity at that Poplar Street house is not the same as the level of drugs they found ultimately that day. But I agree with you. I mean, no, we did not find a gun when we did a search of that house, but all of the things that the judge was hearing, all of the wiretap calls, all of the video from the poll camera, and also I think it's worth noting that the agents listening to those calls at the time, their definite impression was we've got to take steps because someone's getting ready to get shot. And so they did, in fact, take steps. They alerted marked police cruisers, and they sent them into the area in order to try to deter anything that might happen. So you have people on the scene at the time listening to these calls, calls that were later played for Judge Thompson during the Fatico hearing. In combination with the other factors here, certainly suggests that Antonio Small had a gun at his disposal, and he availed himself of that gun at that time. It makes sense that that's where the gun would be, given the context of the drug conspiracy and the role that the Poplar Street residents played in that drug conspiracy. There was also another claim made. I don't know whether the court has any questions about that, about comments that were made during the sentencing proceeding about the harm that was inflicted on the community by Antonio Small's drug activities and those of his co-conspirators, and Judge Thompson's consideration of those when imposing a sentence. Those were not objected to at the time of the sentencing. It's our position that they were very properly put before the court. It was very properly something the court should consider, and it was well supported by the record. But if there's no further questions, I will sit down. Thank you, Your Honors. Mr. McLaughlin, you have some rebuttal. Thank you. Just quickly, in response to Judge Walker's discussion, there was no evidence ever of a gun at that stash house. Putting aside the fact that my client was a felon, therefore he wasn't wise to have any guns on him, there was no evidence that Mr. Sheffield ever had a gun there. Let me interrupt for just a second. So there was, in terms of Sheffield's sentencing, the district court said he would have dropped Sheffield into a lower criminal offense category but decided not to because of the firearm. So Sheffield had a firearm at some place but wasn't clear that it was here at Poplar Street? My understanding, and I'm sorry the government probably knows the answer better since they're the ones that litigated it below, my understanding was that Sheffield's possession of the firearm was based on the same incident as this, the October 12 conversation. Oh, really? Yeah, I don't think it was bootstrapped from anything independent, and I think counsel would agree to that. That's right. So yes, it's all Mr. Sheffield, the judge commenting on Mr. Sheffield having a gun and the judge finding the enhancement applicable in Mr. Small's case, it's all out of this October 12 exchange. Oh, I see. Same thing. Thank you. So anyway, there is no evidence of a gun ever at the stash house, so their argument, well, it wasn't there because my client is a felon doesn't hold water because Mr. Sheffield was there. And again, there's none that he had any. The guns that were found in connection with the conspiracy were all in the possession of Mr. McDowell, at least as far as I know, the biggest cache of guns, who was the cooperator. No tie on any of those, obviously, to my client. And I hear the government saying that, and I've just got to be careful how I say this, the government makes assertions that all this makes it very clear to them and all of it leads to some obvious conclusion. And I know what the government thinks, and they're entitled to think it. The question is whether they went ahead and proved it. And, you know, an agent reaction on the scene that maybe something bad is going to go down doesn't prove for purposes of federal sentencing that my client had a firearm. The judge, piling inference upon inference, doesn't prove for purposes of sentencing that my client had a firearm. And, obviously, he's got a draconian enough guideline. We'd ask that it go back to the one that wouldn't have the two points. Thank you very much. One question. I'm sorry. In the red brief, there's a paragraph. I probably should have asked your adversary this. There's a statement, the intercepted communications also made plain that Small had kept a firearm at the stash house on Poplar Street. That is just a reference to the same October 12, 2018. And then she, the author of the brief, I assume it's your adversary. Colleague. No, colleague. Okay. It goes on to talk about this particular incident. Correct. So, yeah, it's just a shorthand reference to this incident. There's nothing else beside that. Yeah. Thank you. It's in the argument section of the brief. All right. Thank you both. We'll take up the case under advisement.